USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___12/07/2024___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Michael Dalewitz,

                                        **Plaintiff,**

                    -against-

JusLaw LLC, et al.

                                        **Defendants.**

**1:24-cv-00457 (AT) (SDA)**

<u>**AMENDED REPORT AND**</u>
<u>**RECOMMENDATION**</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE:**

This is an action brought by Plaintiff Michael Dalewitz ("Plaintiff" or "Dalewitz") against Defendants JusLaw LLC ("JusLaw"), JusGlobal LLC ("JusGlobal") and Beatrice O'Brien ("O'Brien") (collectively, "Defendants"). Before the Court is Plaintiff's Motion to for Specific Performance of Settlement Agreement. (Pl.'s 11/1/24 Not. of Mot., ECF No. 42.) For the reasons set forth below, it is respectfully recommended that Plaintiff's motion be GRANTED.

<u>**BACKGROUND**</u>

This action arises out of Dalewitz's purported employment by JusLaw. (*See generally* Compl., ECF No. 1.) On November 29, 2022, Dalewitz executed an Employment Agreement pursuant to which he was to be employed as Chief Executive Officer ("CEO") of JusLaw.[1] (Employment Agmt., ECF No. 45-1, at 1, 9.) The Agreement was executed on behalf of JusLaw by O'Brien, who was Chair of JusGlobal. (*See id*. at 9; Compl. ¶¶ 12-13, 42.) Dalewitz contends that Defendants improperly terminated the Agreement, failed to honor the terms of the Agreement

---

[1] Articles III and IV of the Employment Agreement contain confidentiality provisions and a five-year noncompete provision. (*See* Employment Agmt. at pp. 4-6.)

and failed to pay him severance or equity due to him. (Compl. ¶¶ 1-9.) On January 22, 2024, Dalewitz filed the Complaint in this action asserting a breach of contract claim, as well as claims under the New York Labor Law and the Fair Labor Standards Act. (Compl. ¶¶ 86-101.) According to Plaintiff, the "crux" of his claim, "as confirmed by a forensic document examiner paid for equally by all parties, is that Defendant O'Brien altered the parties' executed employment agreement to evade the obligation to pay Plaintiff $300,000 in severance and equity." (Menken 11/4/24 Decl.,[2] ECF No. 45, ¶ 4; *see also* Compl. ¶¶ 76-79.) Defendants filed an Answer and Counterclaims on March 15, 2024. (Answer With Counterclaims, ECF No. 17.) On April 5, 2024, Plaintiff filed his Reply to Defendants' Counterclaims. (Reply, ECF No. 19.)

As relevant here, the parties, through counsel, Bruce Menken ("Attorney Menken") for Plaintiff and Sigurd Sorenson ("Attorney Sorenson") for Defendants, engaged in settlement negotiations on September 25 and 26, 2024. (Menken 11/4/24 Decl. ¶¶ 5-6; Sorenson 11/18/24 Decl., ECF No. 49, ¶ 2.) According to Attorney Menken, following "protracted negotiations . . . the parties entered into an oral agreement on the evening of September 25, 2024." (Menken 11/4/24 Decl. ¶ 5.) Thereafter, the parties negotiated three documents: a joint letter to the Court; a declaration by Defendant O'Brien; and a 10-point memorandum of understanding (the "MOU"). (Menken 11/4/24 Decl. ¶ 6; Sorenson 11/18/24 Decl. ¶ 2.)

First, on September 25, 2024, at 7:19 p.m., Attorney Menken sent an email to Attorney Sorenson stating, "Here's the letter we can file tomorrow after we reiterate the material terms of a settlement[,]" and enclosing a draft letter from Attorney Menken to the Court. (Ex. 1 to

---

[2] The Menken 11/1/24 Declaration initially had been filed at ECF No. 42-1, but later was refiled, with corrected exhibits, at ECF No. 45.

Sorenson 11/18/24 Decl., ECF No. 49-1.) The draft letter, which was dated September 26, 2024,

stated:

> This firm represents Plaintiff Michael Dalewitz and I write pursuant to Your Honor's Individual Rules to request a limited extension of the parties' time to complete fact discovery in this matter. Defendants' counsel joins this request, which is the parties' second request to extend discovery.

> Last night, the parties agreed in principle to settle this case. Rather than incur the expense of conducting the depositions of Jonathan Schwartz (originally scheduled for September 25 but adjourned to September 30 for Mr. Schwartz to retain counsel) and Defendant Beatrice O'Brien (scheduled for today), the parties worked hard last night to work out a tentative resolution. Counsel need to negotiate final terms, draft and execute a written settlement agreement. Accordingly, the parties jointly seek a 30 day extension of the parties' fact discovery deadline, should this agreement not be consummated, for the limited purpose of Defendants' compliance with the Court's September 24, 2024 text order and Plaintiff's deposition of Jonathan Schwartz and Beatrice O'Brien.

(*Id*. at PDF p. 2.) According to Attorney Sorenson, and not disputed by Plaintiff, the parties agreed

on the wording of this letter on September 25, 2024, at 7:24 p.m. (Sorenson 11/18/24 Decl. ¶ 3.)

The following morning, on September 26, 2024, at 10:26 a.m., Attorney Menken sent

Attorney Sorenson an email with the subject line "MOU." (Ex. B to Menken 11/1/24 Decl., ECF

No. 45-2.) The email states: "[o]nce you email me confirmation that the below is acceptable, as

well as the attestation [referring to the O'Brien Declaration], I will file the letter with MJ Aaron.

Please take care of this before noon." (*Id*.) The ten points in the MOU were as follows:

1. Signed Attestation/Declaration/Affidavit by Defendant O'Brien emailed to Menken by 12 noon today or early afternoon the latest;

2. Notice to Menken that the API payment was made to API by Sorenson within 3 days of receipt by O'Brien;

3. $50,000 payment by O'Brien to Dalewitz from the API payment or from any other source by 12/31/24 if the API payment is not received by O'Brien earlier than that date;

4. $100,000 payment by O'Brien/Defendants on or before Jan. 31, 2025;

3

5.   Personal affidavit of confession of judgment signed by O'Brien in the amount of $150,000 less any payments made as of 1/31/25;

6.   All terms in all of the parties' prior agreements shall be null and void;

7.   Menken to draft the letter to the court extending fact discovery until 10/30/24 for the sole purpose of Defendants' compliance with MJ Aaron's 9/24/24 text order and depositions of O'Brien and Schwartz;

8.   Sorenson to provide Menken a draft of the settlement agreement, assignment and confession of judgment documents by COB Oct. 5, 2024;

9.   Defendants to pay a penalty in the form of reasonable attorneys' fees (whether hourly or contingency) paid by Plaintiff to recover any unpaid settlement funds not timely paid by Defendants; and,

10.  Case will not be dismissed with prejudice until after the entire settlement amount ($150,000) is paid - the settlement agreement will include a request that MJ Aaron maintain jurisdiction of the case should a dispute concerning payment arise. (This is standard)

(*Id*.; *see also* Ex. 3 to Sorenson 11/18/24 Decl., ECF No. 49-3.)

In the meantime, the parties also were discussing the wording of the O'Brien Declaration. According to Attorney Sorenson, and not disputed by Plaintiff, on September 26, 2024, at 3:26 p.m., the parties reached agreement on the wording of the declaration to be executed by O'Brien. (Sorenson 11/18/24 Decl. ¶ 3.) The O'Brien Declaration, which is dated September 26, 2024, stated in part, as follows:

1.   I am the sole owner, officer, and director of Attorney Placements International LLC ("API"), a legal search firm.

2.   API (through me) has been negotiating on behalf of a partner candidate (the "Candidate") who is a partner at an AmLaw 100 firm.

3.   The Candidate has accepted an offer, which API (through me) negotiated, from an AmLaw 125 firm ("Firm 2") to begin as a partner at Firm 2 on or before November 10, 2024.

4.   API has an agreement with Firm 2 under which Firm 2 will pay API a fee, which fee exceeds $50,000, within 45 days after the Candidate starts working at Firm 2 (the "Fee").

5.   I will notify my attorney Sigurd Sorenson as soon as I receive the Fee.

6.   If, and only if, a written settlement agreement is reached and signed by October 15, 2024, by all the parties in the above-captioned case, then I will use the Fee to pay Michael Dalewitz $50,000 by no later than December 31, 2024, or sooner, if I receive the Fee sooner.

7.   I acknowledge and understand that Michael Dalewitz is relying on my representations in this declaration in deciding whether to enter into a settlement agreement with me and the other two Defendants in this case under which, if all other terms are agreed to, Defendants would pay him a total of $150,000, inclusive of the $50,000 payment noted above; and that, but for my representations in this declaration, he would not enter into a settlement agreement.

. . .

(O'Brien Decl., Ex. 2 to Sorenson 11/18/24 Decl., ECF No. 49-2, at 1.)

At 4:09 p.m., Attorney Menken again emailed Attorney Sorenson regarding the MOU, asking Attorney Sorenson to "[p]lease confirm the below is acceptable by email." (Ex. B to Menken 11/1/24 Decl.; Ex. 3 to Sorenson 11/18/24 Decl.) At 4:17 p.m., Attorney Sorenson responded "[c]onfirmed." (Menken 11/1/24 Decl. ¶ 6; Sorenson 11/18/24 Decl. ¶ 3; *see also* Ex. B to Menken 11/1/24 Decl.; Ex. 3 to Sorenson 11/18/24 Decl.)

Thereafter, on September 26, 2024, Attorney Menken filed the Joint Letter to the ECF docket[3] with the same contents as the draft letter that had been emailed by Attorney Menken to Attorney Sorenson the prior evening.[4] (Menken 9/26/24 Ltr., ECF No. 36.)

On October 4, 2024, as provided in the MOU, Attorney Sorenson sent a draft Settlement Agreement to Attorney Menken. (*See* Menken 11/1/24 Decl. ¶ 7; Sorenson 11/18/24 Decl. ¶ 8.) The draft Settlement Agreement contained the following terms, among others:

---

[3] The Court's ECF system reflects that the September 26, 2024 letter was filed by Attorney Menken at 4:22 p.m., five minutes after Attorney Sorenson confirmed that the MOU was acceptable to the Defendants.

[4] Based upon the September 26, 2024 letter, the Court granted the 30-day extension request on September 27, 2024. (9/27/24 Order, ECF No. 37.)

4.      O'Brien has signed before a notary an Affidavit of Confession of Judgment, an unsigned copy of which is attached as Exhibit A, and has delivered it to Sorenson, who is holding it in escrow until this Agreement is signed by all Parties ("Confession of Judgment"). Once this Agreement is signed by all Parties, Sorenson shall send, via Federal Express, the Confession of Judgment to Bruce Menken ("Menken") of MSR, and Menken shall hold the Confession of Judgment in escrow per its terms.

5.      Once all Parties have signed this Agreement, Menken may send to Magistrate Judge Aaron a letter requesting that the Court maintain jurisdiction over the Action to enforce this Agreement if the Settlement Amount is not paid in full by January 31, 2025, and Menken may state in such letter that all Defendants join in the request. . . .

. . .

7.      Upon execution of this Agreement by all Parties, all prior agreements, contracts, and understandings between Dalewitz and O'Brien, [JusGlobal], [JusLaw], or any other company or entity owned by O'Brien -including any agreements, contracts, and understandings at issue in the Action-shall be deemed null and void.

(Ex. C to Menken Decl., ECF No. 45-3, at PDF pp. 4-5.) The draft did not include any non-compete provision. (*See id.*)

On October 8, 2024, Attorney Menken sent to Attorney Sorenson proposed minor revisions to the draft Settlement Agreement. (*See* Menken 11/1/24 Decl. ¶ 9; Sorenson 11/18/24 Decl. ¶ 11.) Attorney Menken did not propose any revisions to the language contained in paragraphs 4, 5 and 7 that is quoted above, except to insert the word "signed" in front of "Confession of Judgment" in the last sentence of paragraph 4. (*See* Ex. D to Menken Decl., ECF No. 45-4, at PDF pp. 5-6.)

On October 11, 2024, Attorney Sorenson sent to Attorney Menken a revised version of the draft Settlement Agreement that added an expanded confidentiality provision and a five-year non-compete provision. (Menken 11/1/24 Decl. ¶ 12; Sorenson 11/18/24 Decl. ¶ 13.) Attorney

Sorenson stated in his October 11 transmittal email: "Note that the new paragraphs 13 and 14 (confidential info and non-compete) are simplified versions of articles 3 and 4 of your client's version of the employment agreement." (Ex. 6 to Sorenson Decl., ECF No. 49-7, at PDF p. 1.)

Plaintiff rejected Defendants' additions, emphasizing that they were "material terms and completely contrary to paragraph 6 of [their] executed and agreed upon 9/26/24 MOU."[5] (Menken 10/11/24 Email, ECF No. 49-6.) Attorney Menken asked Attorney Sorenson to let him know by close of business that day if Defendants intended "to continue to try to breach [their] 9/26/24 MOU." (*Id*.) Attorney Menken and Attorney Sorenson discussed the issue via a telephone and, on October 14, 2024, Attorney Sorenson sent Attorney Menken a revised proposal to which Attorney Menken "did not meaningfully respond." (Sorenson 11/18/24 Decl. ¶¶ 14-15.) On October 18, 2024, Attorney Sorenson advised Attorney Menken that Defendants insisted on the inclusion of the added paragraphs. (Menken 11/1/24 Decl. ¶ 15.)

On November 1, 2024, Plaintiff filed the instant motion seeking an Order "(1) [r]uling the parties' [MOU] a fully binding agreement and ordering specific performance of the terms there[of]; [or] (2) [a]lternatively, compelling Defendants to continue negotiations within the agreed upon framework of the MOU, absent Defendants' additional terms demanded after agreement to the terms of the MOU." (Pl.'s 11/1/24 Not. of Mot. at 1.) On November 18, 2024, Defendants filed their opposition memorandum and declaration. (Defs.' 11/18/24 Mem., ECF No. 48; Sorenson 11/18/24 Decl.) On November 26, 2024, Plaintiff filed his reply memorandum and declaration. (Pl.'s 11/26/24 Reply, ECF No. 50; Menken 11/26/24 Reply Decl., ECF No. 50-1.)

---

[5] As noted earlier, paragraph 6 of the MOU stated: "All terms in all of the parties' prior agreements shall be null and void." (Ex. B to Menken 11/1/24 Decl.)

**LEGAL STANDARDS**

"It is well settled . . . that 'a district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it.'" *Elysium Health, Inc. v. ChromaDex, Inc.*, No. 22-1059-CV, 2023 WL 7037442, at *3 (2d Cir. Oct. 26, 2023) (quoting *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (per curiam)) (brackets omitted). Indeed, under New York law,[6] "[s]tipulations of settlement are judicially favored and may not be lightly set aside*." IDT Corp. v. Tyco Group, S.A.R.L.*, 13 N.Y.3d 209, 213 (2009) (internal quotation marks omitted). The party seeking to enforce a purported settlement agreement bears the burden of proving that a binding and enforceable agreement exists. *See Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006); *accord Grgurev v. Licul*, No. 15-CV-09805 (GHW), 2016 WL 6652741, at *3 (S.D.N.Y. Nov. 10, 2016).

"It is a basic tenet of contract law that, in order to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent." *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 136 (2d Cir. 2022) (cleaned up). "As a general matter, courts look to the basic elements of the offer and acceptance to determine if there was an objective meeting of the minds sufficient to create a binding and enforceable contract." *Id.* (citing *Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999)). However, "[u]nder New York law, if parties do not

---

[6] "Whether a district court should apply federal or state law in order to decide a motion to enforce a settlement has not yet been resolved by the Second Circuit." *Lee v. Grove Grp. Advisors LLC*, No. 20-CV-05937 (ALC), 2024 WL 1077894, at *3 (S.D.N.Y. Feb. 29, 2024) (cleaned up). However, "the Second Circuit has noted that there is 'no material difference' between New York law and federal common law on this issue." *Id.* (citing *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997)); *see also Figueroa v. N.Y.C. Dep't of Sanitation*, 475 F. App'x 365, 366 (2d Cir. 2012) (same).

intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984). "This rule holds even if the parties have orally agreed upon all the terms of the proposed contract." *Id.; see also Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 830 (2d Cir. 2019) ("Under New York law, '[i]t is well settled that, if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and *signed by both of them*, they are not bound and may not be held liable until it has been written out and signed.'" (quoting *Scheck v. Francis*, 26 N.Y.2d 466, 469-70 (1970) (emphasis supplied by Second Circuit)).

The Second Circuit has acknowledged two types of "preliminary" contracts that are recognized under New York law. *Murphy v. Inst. of Int'l Educ.*, 32 F.4th 146, 150-51 (2d Cir. 2022). A "Type I" agreement "occurs when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation." *Id*. at 150 (quoting *Teachers Ins. & Annuity Ass'n v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987)). Such an agreement "is 'preliminary only in the sense that the parties desire a more elaborate formalization of the agreement,' which, although not necessary, is desirable." *Id*. (quoting *Tribune*, 670 F. Supp. at 498). "A Type I agreement, by definition, contemplates a future formalization that will likely include some additional terms." *Id*. at 152. However, "as long as 'there were no issues outstanding that were perceived by the parties as requiring negotiation,' trivial open issues will not prevent the court from upholding a Type I agreement." *Id*. (quoting *Shann v. Dunk*, 84 F.3d 73, 82 (2d Cir. 1996)). Type I agreements "render the parties 'fully bound to carry out the terms of the agreement even if the formal instrument is never executed.'" *Vacold*

*LLC v. Cerami*, 545 F.3d 114, 124 (2d Cir. 2008) (quoting *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548 (2d Cir. 1998)).

By contrast, a "Type II" agreement "is one that expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated." *Murphy*, 32 F.4th at 150 (quoting *Tribune*, 670 F. Supp. at 498). In a Type II agreement, "the parties 'bind themselves to a concededly incomplete agreement in the sense that they accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement within the scope that has been settled in the preliminary agreement.'" *Id*. at 151 (quoting *Tribune*, 670 F. Supp. at 498). Type II agreements "do not commit the parties to their ultimate contractual objective. Rather, they bind the parties to the obligation to negotiate the open issues in good faith in an attempt to reach the objective within the agreed framework." *Vacold*, 545 F.3d at 124 (cleaned up).

The Second Circuit refers to the four factors articulated in *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80-81 (2d Cir. 1985), known as the *Winston* factors, to determine whether parties reached a Type I agreement. The *Winston* factors are:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id*. These circumstances may be shown by "oral testimony or by correspondence or other preliminary or partially complete writings." *Id*. at 81 (citing Restatement (Second) of Contracts § 27 comment c (1981)). "But, despite any multi-factor inquiry, if the Court finds substantial ambiguity regarding whether both parties have mutually assented to all material terms, then the

Court can neither find, nor enforce, a contract." *Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*, No. 06-CV-02652 (JGK), 2008 WL 5169495, at *3 (S.D.N.Y. Dec. 9, 2008) (citing *Schurr v. Austin Galleries of Ill., Inc.*, 719 F.2d 571, 576 (2d Cir. 1983)).

There is "a modified five-factor version of [the foregoing *Winston* factors] test" to determine whether the parties reached a Type II agreement. *Murphy*, 32 F.4th at 151 (citing *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989)). These five factors are as follows:

> (1) the language of the agreement; (2) the context of the negotiations; (3) the existence of open terms; (4) partial performance; and (5) the necessity of putting the agreement in final form, as indicated by the customary form of such transactions.

*Arcadian*, 884 F.2d at 72 (citing *Tribune*, 670 F. Supp. at 499-503)).

The four *Winston* factors and the modified five-factor version thereof, do not provide "a talismanic scorecard." *Murphy*, 32 F.4th at 151 (quoting *Vacold*, 545 F.3d at 125). "Indeed, . . . some of these factors may be disregarded when not relevant or helpful to [the] analysis." *Id.* (citations omitted).

## DISCUSSION

Plaintiff moves for specific performance of the MOU as a binding settlement agreement and, in the alternative, an order compelling Defendants to continue negotiations within the agreed upon framework of the MOU. (Pl.'s Not. of Mot.) After consideration of the *Winston* factors set forth below, the Court finds that the parties reached a Type I agreement and thus recommends that the parties' agreement be enforced.

I.      **Express Reservation Not To Be Bound**

With respect to the first *Winston* factor, the MOU does not contain an express reservation of the right not to be bound in the absence of a signed settlement agreement. To the contrary, a September 25, 2024 email from Attorney Menken that Attorney Sorenson attaches to his Declaration in opposition to the pending motion reflects that the purpose of the MOU, which was a writing agreed upon the next day, was to "reiterate the material terms" of the settlement. (*See* Ex. 1 to Sorenson 11/18/24 Decl.) Defendants argue that the O'Brien Declaration and the Joint Letter to the Court, both of which were incorporated by reference in the MOU, as well as the language of the drafts of the settlement agreement that came later, are evidence that the parties expressly reserved their right not to be bound in the absence of a signed settlement agreement. (Defs.' Opp. Mem. at 5-7.) The Court disagrees.

The O'Brien Declaration and the Joint Letter were both terms of the settlement that the parties were negotiating. As the O'Brien Declaration indicates, Plaintiff would not "enter into a settlement agreement" without the declaration and the signed declaration was one of the material terms set forth in the MOU. (O'Brien Decl. ¶ 7.) Although the O'Brien Declaration stated "[i]f, and only if, a written settlement agreement is reached and signed by October 15, 2024," she would pay Plaintiff $50,000 from the fee her API firm received by no later than December 31, 2024 (*id*. ¶ 6), this statement is not evidence that the parties did not intend the MOU, which they agreed to after the O'Brien declaration was signed, to be binding. In fact, the later-agreed-upon MOU expressly provided that the $50,000 payment would be made "from any other source by 12/31/24 if the API payment [was] not received by O'Brien earlier than that date" (*see* Ex. B to Menken 11/1/24 Decl.), without the contingency for a written agreement.

Similarly, the Joint Letter to the Court was drafted and agreed to by the parties prior to Defendants' counsel assenting to the terms of the MOU. (*See* Sorenson 11/18/24 Decl. ¶ 3.) The Joint Letter states that "the parties agreed in principle to settle this case," "the parties worked hard last night to work out a tentative resolution," "[c]ounsel need[ed] to negotiate final terms, draft and execute a written settlement agreement." (*See* Menken 9/26/24 Ltr.) The Court finds that the language in the Joint Letter is not evidence that the parties did not intend the MOU to be binding. The Joint Letter was drafted, and the language of such letter was agreed upon, on the evening of September 25, 2024 (*see* Sorenson 11/18/24 Decl. ¶ 3), at which time the parties had come to agreement on terms, but had not yet finalized the MOU, which was agreed to the following day.

Finally, Defendants argue that they reserved their intent to be bound because the draft settlement agreement exchanged between the parties made references to the agreement being signed or executed by all parties. (*See* Ex. C to Menken Decl., ECF No. 45-3, at PDF pp. 4-5; Ex. D to Menken Decl., ECF No. 45-4, at PDF pp. 5-6.) However, the MOU contained no such reservations. The MOU did contemplate a further written settlement agreement, but neither side made their acceptance of the MOU contingent on such further agreement. "[T]he mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event." *Marino Inst. of Continuing Legal Educ., Inc. v. Issa*, No. 12-CV-04320 (KPF), 2013 WL 6723614, at *6 (S.D.N.Y. Dec. 20, 2013) (quoting *V'Soske v. Barwick,* 404 F.2d 495, 499 (2d Cir. 1968)); *see also Green v. N.Y.C. Transit Auth.*, No. 15-CV-08204 (ALC) (SN), 2022 WL 2819738, at *3 (S.D.N.Y. May 10, 2022), *report and recommendation adopted*, 2022 WL 2819578 (S.D.N.Y. July 19, 2022) ("Although the parties

contemplated that the terms of their agreement would be reduced to writing, that alone does not preclude enforcement under the oral agreement."); *Shape CD, Ltd. v. Quiksilver, Inc.*, No. 07-CV-02033 (PKC), 2008 WL 2009668, at *2 (S.D.N.Y. May 6, 2008) ("The absence of a fully executed settlement agreement need not be fatal to enforcement, even if one were originally contemplated by the parties." (citing *Winston*, 777 F.2d at 78)). Accordingly, the first *Winston* factor weighs in favor of enforcement.

## II.    Partial Performance

The second factor to be considered under *Winston* is whether there has been partial performance of the contract. Plaintiff correctly notes that he partially performed under the MOU by drafting the letter to the Court and that Defendant performed by drafting the settlement agreement. (Pl.'s 11/1/24 Mem. at 10.) Thus, this factor favors Plaintiff. However, this factor holds "the least sway with the court." *See Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 268 (S.D.N.Y. 2022) (citation omitted).

## III.    Whether All Terms Had Been Agreed Upon

The third *Winston* factor is "whether all terms of the alleged contract had been agreed upon." *Winston*, 777 F.2d at 82. The question is "whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to." *R.G. Group,* 751 F.2d at 76. In some cases, "'minor' or 'technical' modifications to a settlement agreement may indicate that the parties did not intend to be bound prior to these modifications." *Marino*, 2013 WL 6723614, at *7 (quoting *Winston*, 777 F.2d at 82). "On the other hand, such changes are relevant only if they show that 'there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing

14

satisfactory to both sides in every respect.'" *Id*. (quoting *Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007)).

Defendants argue that Plaintiff cannot show that there was nothing left to negotiate because the Joint Letter to the Court states that there open terms and the parties anticipated further preparation of a settlement agreement and other documents, but Defendants do not actually identify any open terms. (Defs.' Opp. Mem. at 8.) Moreover, the MOU does not include any open terms or reference outstanding issues that were perceived by the parties as requiring negotiation. In addition, the initial drafts of the settlement agreement exchanged by the parties aligned with the terms in the MOU. *See HVN Clothing, Inc. v. Lomeway E-Com. (Luxembourg) Ltd.*, 636 F. Supp. 3d 451, 457 (S.D.N.Y. 2022) (fact that parties negotiated specific language to release did not indicate open terms when final version aligned with e-mail agreement); *see also Galanis v. Harmonie Club N.Y.*, No. 13-CV-04344 (GHW), 2014 WL 4928962, at *10 (S.D.N.Y. Oct. 2, 2014) (finding that parties had "reached an agreement as to all of the material terms" where their oral agreement and their later draft formal agreement were "substantively consistent").

Notably, the eventual issue here was not that Defendants sought a minor or technical change regarding an agreed-upon term, but that they sought to re-negotiate a term that already had been agreed to, namely that all terms in the parties' prior agreements, including Plaintiff's Employment Agreement, would be null and void. That is, Defendants sought to insert a five-year noncompete provision like the one contained in the Employment Agreement only after the MOU had been agreed upon (containing a provision that "[a]ll terms in all of the parties' prior agreements shall be null and void" (Ex. B to Menken 11/1/24 Decl.)), and only after Defendants themselves had sent a draft of the settlement agreement to Plaintiff, pursuant to the terms of

the MOU, which draft did not contain a noncompete provision. (*See* Ex. C to Menken Decl.)

Defendants' apparent change of heart cannot "unmake a bargain already made." *HVN Clothing,*

*Inc.,* 636 F. Supp. 3d at 455 (citing *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445 (2d Cir.

2005)). Accordingly, this factor weighs in favor of Plaintiff.

## IV.    Type Of Contract Usually Committed To Writing

The final factor to be considered is whether, under *Winston*, the agreement at issue is the

type of contract usually committed to writing. "Settlements of any claim are generally required

to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at

326. The question is whether the settlement agreement terms are sufficiently complex or involve

long time periods, such that there should be a formal writing. *See Adjustrite Sys., Inc.*, 145 F.3d

at 551. For example, in *Winston*, the Second Circuit found that a four-page settlement agreement

calling for $62,500 to be paid "over several years based on a percentage of earnings" was

sufficiently complex to require a signed writing. *Winston*, 777 F.2d at 83.

On the other hand, some courts have found that the fourth factor is satisfied where, as

here, the parties' agreement was set forth in writing, even if it was not the ultimate writing that

the parties' envisioned. *See HVN Clothing, Inc.*, 636 F. Supp. 3d at 456 (fourth factor satisfied

where parties' agreement committed to writing in form of emails) (citing *In re Elysium Health-*

*ChromaDex Litig.*, No. 17-CV-07394 (LJL), 2022 WL 1156181, at *8-9 (S.D.N.Y. Apr. 19, 2022)

(finding settlement terms set forth in e-mail constituted written agreement for purposes of

fourth *Winston* factor), *aff'd*, 2023 WL 7037442, at *3 (2d Cir. Oct. 26, 2023)). Because the MOU

was set forth in writing, the Court finds that the fourth factor also favors Plaintiff.

Based upon the Court's analysis of the *Winston* factors, the Court finds that the parties entered into a Type I agreement, which should be enforced.[7]

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion (ECF No. 42) be GRANTED.

Dated:        December 7, 2024
              New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**

*        *        *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Torres.

---

[7] Because the Court finds that a Type I agreement exists here, the Court does not engage in an analysis of the modified five-factor test.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).